# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TYLER ROTHE**, | Case No. 3:22-cv-00992-IM |
| Plaintiff, | |
| | **OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| **ANCHOR QEA, LLC**, | |
| Defendant. | |

Elizabeth Farrell, Attorney at Law, 0324 SW Abernethy Street, Portland, OR 97239. Attorney for Plaintiff.

John A. Berg, Littler Mendelson, PC, 1300 SW Fifth Avenue, Wells Fargo Tower, Suite 2050, Portland, OR 97201. Attorney for Defendant.

**IMMERGUT, District Judge.**

On June 5, 2022, Plaintiff Tyler Rothe ("Plaintiff") filed a complaint in Multnomah County Circuit Court against Defendant Anchor QEA, LLC ("Defendant"), alleging fraud and negligent misrepresentation arising out of Defendant's offer of employment. ECF 2-1. On July 8, 2022, Defendant removed the case to this Court. ECF 1. Plaintiff subsequently filed a First Amended Complaint, ECF 5, and a Second Amended Complaint, ECF 17. Plaintiff alleges two

PAGE 1 – OPINION AND ORDER

claims in his Second Amended Complaint: fraud and promissory estoppel. ECF 17 at ¶¶ 30–41. On December 23, 2022, Defendant moved to dismiss Plaintiff's Second Amended Complaint in its entirety with prejudice for failure to state a claim upon which relief may be granted. ECF 18. Plaintiff filed a response in opposition, ECF 22, and Defendant filed a reply, ECF 26. Thereafter, Defendant filed a Notice of Supplemental Authority in support of its Motion to Dismiss. ECF 32.

Before this Court is Defendant's Motion to Dismiss. ECF 18. For the following reasons, this Court GRANTS in part and DENIES in part Defendant's motion.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the

expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

## BACKGROUND

Plaintiff is an Arizona state resident. ECF 17 at ¶ 1. At all relevant times, Defendant employed Plaintiff in Portland, Oregon. *Id.* at ¶ 2. Defendant is a foreign limited liability corporation, licensed to do business in the state of Oregon. *Id.* At all relevant times, Sarah Weiskotten ("Weiskotten") was employed by Defendant as the Director of Facilities and Logistics, Robin Utley ("Utley") was employed by Defendant as Senior HR Generalist, and Diana Reynolds ("Reynolds") was employed by Defendant as Principal. *Id.* at ¶ 3.

Plaintiff worked for Defendant as the Assistant Facilities Manager from January 2019 until July 2020, when he was terminated due to the COVID-19 pandemic. *Id.* at ¶ 4. In July of 2021, Weiskotten, Plaintiff's former supervisor, called Plaintiff and offered to fully reinstate him in his former position. *Id.* at ¶ 5. Plaintiff alleges that he told Weiskotten that he was very excited about the possibility of returning to work for Defendant but explained that he and his wife had "definite" plans to move to Arizona. *Id.* Weiskotten replied that "there would be no issues with [Plaintiff] moving to Arizona, stating he could work fully remotely from Arizona and asking if there was a nearby airport as Plaintiff's position required frequent travel to different states." *Id.* at ¶ 6. Plaintiff alleges that Weiskotten's exact words to Plaintiff were: "How far away is the

Phoenix airport?" and that Weiskotten responded excitedly when he explained that there was an airport nearby. *Id.*

At that time, Defendant employed people throughout the United States, some of whom were working remotely in states where Defendant had no offices or any established presence. *Id.* at ¶ 7. On account of Plaintiff's duties while previously employed by Defendant, Plaintiff knew exactly "which people worked from where" and the location of Defendant's offices. *Id.* Plaintiff alleges that he felt "completely comfortable relying on Weiskotten's statements that it would not be a problem for him to work remotely." *Id.* Ultimately, Plaintiff accepted the position based on Weiskotten's "promise" that Plaintiff's relocation to Arizona "would not be a problem." *Id.* at ¶ 8.

Plaintiff began working for Defendant on August 2, 2021. *Id.* at ¶ 9. On Plaintiff's third day of work, Weiskotten left for a month-long honeymoon trip. *Id.* at ¶ 10. On August 11, 2021, Plaintiff texted Weiskotten that he needed to verify his salary and the "fact that [he could] work remotely" to provide potential lending institutions with employment verification in order to purchase a home in Arizona. *Id.* at ¶ 11; ECF 19-1, Ex. A at 20–21.[1] Weiskottten responded that she would reach out to a co-worker to "[g]et . . . an answer on the HR-Finance side of things." ECF 17 at ¶ 12. Following up with another text, Weiskotton told Plaintiff that "they would need

---

[1] Defendant provides a copy of the text message exchange between Plaintiff and Weiskotten and a copy of the email exchange between Plaintiff, Weiskotten, Utley, and Reynolds in support of its motion to dismiss. *See* ECF 19-1, Ex. A; ECF 20-1, Ex. A. Plaintiff cites the text message exchange in paragraphs 11–18 and 20 of his Second Amended Complaint and cites the email exchange in paragraphs 22–23 and 25–27 of the same. ECF 17 at ¶¶ 11–18, 20, 22–23, 25–27. Although this Court is ordinarily limited to the complaint in deciding a Rule 12(b)(6) motion, it may consider documents which are referenced in the complaint or relied on by a plaintiff. *No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). As the records provided by Defendant satisfy these standards, this Court considers these records in ruling on Defendant's motion. *See* ECF 19-1, Ex. A; ECF 20-1, Ex. A.

to go through HR-Finance and the HQ Managing Committee for approval because Arizona is a state where Defendant did not have an established office." *Id.* at ¶ 13. Weiskotton also commented that she thought Plaintiff's move had been planned for a bit later in the fall, which surprised Plaintiff. *Id.* Plaintiff responded to Weiskotten's text message, explaining he and his wife decided to push their original plans to move in late August back because Plaintiff would need to cover for Weiskotten during her month-long trip. *Id.* at ¶ 14. Plaintiff alleges that he "had previously informed Weiskotten of this fact during one of their initial phone conversations" when she mentioned her need for coverage during her trip. *Id.* Weiskotten responded with the following message:

> I spoke to Robin Utley[, who] said the biggest thing is if we are already registered in AZ or not. Also, apparently they were already working on a new transfer policy in the guidebook so she is looking into that too. People are definitely looking into this – I'm keeping my fingers crossed this all works out!

*Id.* at ¶ 15. Plaintiff responded, stating: "like I said on our first call, I'm royally hoping this doesn't throw any wrenches into the gears. Everything 'should' be able to operate as normal barring any insane behind the scenes stuff. I just wish I could help with all that rather just sitting around and crossing my fingers." ECF 19-1, Ex. A at 25.

On August 12, 2021, Weiskotten sent a text to Plaintiff stating that "she wished she had better news for him." ECF 17 at ¶ 16. She explained that she had been told that Defendant was not registered in Arizona and that relocation in Arizona may not be an option. *Id.* Weiskotten apologized, stating that she was speaking to HR to see if there was another option. *Id.* She also stated that "apparently, new guidelines are in place now." *Id.* Plaintiff responded that he had turned down interviews with three companies due to Weiskotten's offer of employment. *Id.* at ¶ 17. Weiskotten explained that she "[n]ever thought it'd be an issue" and that she was

"devastated." *Id.* at ¶ 18. Wesikotten also called Plaintiff on August 12 and stated on the phone

that she was sorry for "dropping the ball" and "leading" Plaintiff on. *Id.* at ¶ 19. She also stated

that she "fe[lt] like such a terrible person" and repeated that she "never thought this would be an

issue." *Id.*

On August 13, 2021, Plaintiff sent an email to Utley and Reynolds explaining that he felt

"used." *Id.* at ¶ 22. Plaintiff explains that "[h]e had begun to realize that Weiskotten desperately

needed someone to cover for her while she was on her honeymoon." *Id.* In the email, Plaintiff

reiterated that he has been "very transparent" with Weiskotten and that he had turned down

interviews because Weiskotten had assured him that his move to Arizona "would not be a

problem." *Id.* Plaintiff also stated that his wife had resigned from her job and that they had sold

their home, adjusting the closing date to accommodate Weiskotten's trip. *Id.*

On August 16, Weiskotten called Plaintiff and apologized for "the miscommunication."

*Id.* at ¶ 24. On August 18, Plaintiff received an email from Reynolds stating the following:

> At the beginning of the year, the Company officially decided we would not authorize
> voluntary relocations to states in which the Company is not a registered employer.
>
> We are not a registered employer in Arizona and therefore we cannot approve your request
> for voluntary location.
>
> We understand if this changes your decision to remain employed with Anchor QEA. We
> hope that you will decide to stay with AQ in Portland or any other location where we
> currently are a registered employer.

*Id.* at ¶ 26. Plaintiff responded in an email, explaining that he had relied on Defendant's promises

to his detriment when he accepted the position and that "to now be told that [Defendant] had a

policy in place – at the time I was promised I could work remotely – is extremely troubling." *Id.*

at ¶ 27. On August 26, 2021, Plaintiff received a termination letter and severance agreement

from Defendant, which cited Defendant's Voluntary Relocation Policy and Plaintiff's alleged abandonment of his position. *Id.* at ¶ 28.

## DISCUSSION

As an initial matter, Plaintiff requests that this Court deny Defendant's motion in its entirety due to defense counsel's alleged failure to confer in good faith as required by Oregon Local Rule of Civil Procedure ("LR") 7-1. ECF 22 at 5; *see also* LR 7-1(a)(1). LR 7-1 requires that the first paragraph of a party's motion certifies, among other things, that "the parties made a good faith effort through personal or telephone conferences to resolve the dispute and have been unable to do so." LR 7-1(a)(1)(A). The authority to deny Defendant's motion for failing to adhere to the meet-and-confer requirement is within this Court's discretion. LR 7-1(a)(3); *see Ovitsky v. Oregon*, 594 F. App'x 431, 431 (9th Cir. 2015). Although Defendant arguably failed to fully satisfy the meet-and-confer requirement, this failure is not solely due to Defendant.[2] At this stage, this Court declines to exercise its discretion to deny Defendant's motion under LR 7-1. Accordingly, this Court next considers the merits of Defendant's motion.

Defendant moves to dismiss Plaintiff's Second Amended Complaint in its entirety with prejudice for failure to state a claim upon which relief may be granted. ECF 18. In moving to dismiss Plaintiff's fraud claim, Defendant asserts that Plaintiff fails to sufficiently plead reasonable reliance and knowledge of falsity—two required elements of fraud under Oregon law. *Id.* at 6. Because this Court finds that Plaintiff has failed to sufficiently allege knowledge of

---

[2] This Court understands that counsel exchanged some emails about the motion to dismiss and planned to speak on the phone but never did. ECF 22 at 2–3; *see also* ECF 26 at 10. The day prior to the filing of Defendant's motion, defense counsel reached out by phone and email to speak with Plaintiff's counsel and Plaintiff's counsel did not reply. ECF 22 at 3; ECF 26 at 10–11. Defense counsel filed the motion the following afternoon. ECF 22 at 3–4; ECF 26 at 11.

falsity, this Court GRANTS Defendant's motion as to Plaintiff's fraud claim. Defendant also moves to dismiss Plaintiff's promissory estoppel claim by contending that Plaintiff has failed to sufficiently allege reasonable reliance. *Id.* at 12. Because this Court finds that Plaintiff has sufficiently alleged reasonable reliance, this Court DENIES Defendant's motion as to Plaintiff's promissory estoppel claim. This Court addresses each claim in turn.

## A. Fraud

Plaintiff asserts that Defendant intentionally coerced Plaintiff into accepting an offer of employment knowing that he would be moving to Arizona, even though there was a policy in place precluding Plaintiff from working in Arizona. ECF 17 at ¶ 32. Defendant moves to dismiss Plaintiff's fraud claim, asserting that Plaintiff has failed to sufficiently allege two elements of fraud: reasonable reliance and knowledge of falsity. ECF 18 at 6. To prevail on a fraud claim under Oregon law, a plaintiff must show the following:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.

*Oregon Pub. Employees' Ret. Bd. ex rel. Oregon Pub. Employees' Ret. Fund v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 424 (2004).

### 1. Reasonable Reliance

Defendant first moves to dismiss Plaintiff's fraud claim because Plaintiff has failed to sufficiently allege the element of reasonable reliance. This Court disagrees.

The Oregon Supreme Court has identified the standard for reasonable reliance as follows: "If [the plaintiff] is a person of normal intelligence, experience and education, he may not put faith in representations which any such normal person would recognize at once as

preposterous . . . or which are shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth, and still compel the defendant to be responsible for his loss." *Cocchiara v. Lithia Motors, Inc.*, 353 Or. 282, 298 (2013) (citation omitted). Whether reliance on an alleged misrepresentation is justifiable turns on "the totality of the parties' circumstances and conduct." *Oregon Pub. Employees' Ret. Bd.*, 191 Or. App. at 428. For reliance to be justifiable, the party claiming reliance must have taken "'reasonable precautions to safeguard [his or her] own interests' under the particular circumstances of the case." *Gregory v. Novak*, 121 Or. App. 651, 655 (1993); *see Coy v. Starling*, 53 Or. App. 76, 80 (1981). "What precautions a person must take to protect his or her own interests turns on the nature of the person's relationship with the person making the alleged misrepresentation, and that person's experience and sophistication with the type of transaction at issue, as well as with the subject matter of the misrepresentation." *Vukanovich v. Kine*, 268 Or. App. 623, 635 (2015) (citation omitted).

In moving to dismiss Plaintiff's fraud claim, Defendant asserts that any reliance on Weiskotten's remark that "there would be no issues with him moving to Arizona" was objectively unreasonable.[3] ECF 18 at 6. Instead, citing various alleged "admissions," Defendant

---

[3] In support of its argument, Defendant cites to *Nettleton v. Exact Sciences Corp.*, No. 6:22-CV-01290-MC, 2022 WL 17626549 (D. Or. Dec. 13, 2022) ("*Nettleton I*"), ECF 18, and *Nettleton v. Exact Sciences Corp.*, No. 6:22-cv-01290-MC, 2022 WL 3380664 (D. Or. May 11, 2023) ("*Nettleton II*"), ECF 32. In both *Nettleton* opinions, Judge Michael J. McShane dismissed a job applicant's fraud claim for lack of reasonable reliance. *See, e.g.*, *Nettleton I*, No. 6:22-CV-01290-MC, 2022 WL 17626549, at *5. However, this Court finds that the facts at issue *Nettleton* are distinguishable from those pled by Plaintiff in this case. For example, in *Nettleton I*, the plaintiff alleged that defendants "made him a personal guarantee that [p]laintiff would not have to relocate," but Judge McShane found that the only evidence provided "merely states a general 'expectation' that [successful applicants] will not have to relocate." *Id.* Judge McShane thereby concluded that: "[A]n expectation is not a guarantee, and it was unreasonable to interpret this statement as a 'promise' to never relocate [p]laintiff at any time during his employment." *Id.* In contrast, Plaintiff has alleged that Weiskotten stated to him personally that "there would be no

contends that Plaintiff "understood from the beginning that working remotely in Arizona was not guaranteed." *Id.* For example, Defendant highlights that Plaintiff had texted Weiskotten on August 11 to let her know that he needed to verify the "fact that [he could] work remotely." ECF 26 at 7; *see* ECF 19-1, Ex. A at 20. Defendant also cites the following statement by Plaintiff to Weiskotten on August 11: "like I said on our first call, I'm royally hoping this doesn't throw any wrenches into the gears. Everything 'should' be able to operate as normal barring any insane behind the scenes stuff. I just wish I could help with all that rather just sitting around and crossing my fingers." ECF 18 at 7; *see* ECF 19-1, Ex. A at 25. Finally, Defendant points to an email from Plaintiff to Utley and Reynolds, where Plaintiff states that he "assumed that all of this was already in the works" and was "incredibly disappointed in [him]self that [he] signed on without making sure that [it] was taken care of beforehand." ECF 18 at 7; *see* ECF 20-1, Ex. A at 9.

In contrast, Plaintiff cites to Weiskotten's statements regarding his remote employment as well as his own knowledge of remote work conditions in support of his reasonable reliance. ECF 22 at 7. For example, in his Second Amended Complaint, Plaintiff alleges that, after explaining his "definite" plan to move to Arizona on his initial call with Weiskotten, "Weiskotten replied that there would be no issues with him moving to Arizona" and that "he could work fully remotely from Arizona." ECF 17 at ¶¶ 5–6. Plaintiff alleges that, at that time, "Defendant had employees throughout the United States, some of whom were working remotely in states where

---

issues with [Plaintiff] moving to Arizona" and that he could work fully remotely from Arizona. ECF 17 at ¶ 6. This Court cannot conclude at this stage that these facts amount merely to a general expectation regarding remote employment. Moreover, the employee in *Nettleton* signed an Acceptance Letter, which explicitly "supersede[d] all prior written . . . communications . . . regarding employment by the Company." *Nettleton II*, No. 6:22-cv-01290-MC, 2023 WL 3380664 at *2. Defendant has not contended that a similar supersession clause applies to Plaintiff's acceptance of employment in this case.

Defendant had no offices or any established presence." *Id.* at ¶ 7. Due to his previous employment with Defendant, Plaintiff "knew exactly which people worked from where as well as the location of Defendant's brick and mortar offices." *Id.* Accordingly, Plaintiff alleges that he "felt completely comfortable relying on Weiskotten's statements that it would not be a problem for him to work remotely." *Id.*

Whether reliance on an alleged misrepresentation is justifiable turns on "the totality of the parties' circumstances and conduct." *See Oregon Pub. Employees' Ret. Bd.*, 191 Or. App. at 428. Based on the facts presented by Plaintiff and Defendant, reasonable but competing inferences may be drawn about the reasonableness of Plaintiff's reliance at this stage. For example, it is not clear how concrete Weiskotten's assurance was that Plaintiff "could work fully remotely," ECF 17 at ¶ 6, as Plaintiff still had to "verify" his ability to work remotely thereafter with Human Resources, ECF 19-1, Ex. A at 20–21. However, construing the pleaded facts in the light most favorable to Plaintiff, this Court finds that Plaintiff has sufficiently alleged reasonable reliance at this stage. *See Glob. Exec. Mgmt. Sols., Inc. v. Int'l Bus. Machines Corp.*, 260 F. Supp. 3d 1345, 1386 (D. Or. 2017) (reserving reasonable reliance determination for jury where "reasonable but competing inferences may be drawn" about evidence at issue); *cf. Cocchiara*, 353 Or. 282 at 297 ("'Normal' people rely on offers of at-will employment every day, or at least a jury would be entitled to so find, based on the facts in a particular case.").

### 2. Knowledge of Falsity

Defendant also moves to dismiss Plaintiff's fraud claim by asserting that Plaintiff has failed to plead that Weiskotten knew her representation regarding remote employment was false. ECF 18 at 8; *see also* ECF 17 at ¶ 6. A speaker's knowledge of the relevant statement's falsity is a required element of fraud under Oregon law. *Oregon Pub. Employees' Ret. Bd.*, 191 Or. App. at 424. Here, Plaintiff's fraud claim relies on Weiskotten's promise that Plaintiff would be able

to work remotely were he to accept her offer of employment. *See* ECF 17 at ¶ 32. However, "[f]raud can [only] be predicated upon a promise to do something in the future [if] it is alleged and proved that, at the time of the making of the promise, there was no present intention of performance or, alternatively, that the promise was made with reckless disregard as to whether the promissor could or could not perform." *Tran v. Tehrani*, 99 Or. App. 141, 144 (1989) (quoting *Webb v. Clark*, 274 Or. 387, 393 n.2 (1976)); *see also Glob. Exec. Mgmt. Sols., Inc.*, 260 F. Supp. 3d at 1383–84. Under Oregon law, courts "may not infer an intent not to perform from the mere fact of nonperformance." *Tran*, 99 Or. App. at 144. Rather, "there must be other evidence for inferring intent." *Id.* (citations omitted).

Plaintiff alleges the following in support of this element: "Defendant intentionally coerced Plaintiff into accepting the position of employment, knowing that he would be moving to Arizona and that there was a policy in place that precluded him from working remotely from Arizona, as alleged above." ECF 17 at ¶ 32. Defendant maintains that this is insufficient to plead knowledge because Plaintiff has failed to allege that *Weiskotten*, "the speaker," had any knowledge of falsity. ECF 18 at 9. In response, Plaintiff argues that Weiskotten, as an agent of Defendant and the Director of Facilities and Logistics, had either actual or constructive knowledge of Defendant's policy which "disallowed employees from relocating to states in which Defendant is not a registered employer," including Arizona. ECF 22 at 9–10. Plaintiff argues that, due to her knowledge of this disqualifying policy, Weiskotten was aware of the falsity of her representation that Plaintiff could work remotely from Arizona. *See id.*

This Court first addresses Plaintiff's actual knowledge argument. While Plaintiff does allege that *Defendant* had knowledge of the disqualifying policy at issue in his complaint, ECF 17 at ¶ 32, Plaintiff has failed to further allege that Weiskotten also shared this knowledge at the

time of her initial phone call with Plaintiff. Accordingly, this Court finds that Plaintiff has failed to sufficiently allege Weiskotten's actual knowledge of falsity.[4] *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

Plaintiff also contends that Weiskotten had constructive knowledge of falsity sufficient to allege fraud. In support of this argument, Plaintiff cites to *Aventa Learning, Inc. v. K12, Inc.*, 830 F Supp 2d 1083 (W.D. Wash. 2011) and *Scott v. Beth Israel Medical Center, Inc.*, 847 N.Y.S.2d 436 (Sup. Ct. 2007), two cases in which courts charged employees with constructive knowledge of their company's policies. However, both relevant holdings pertain to privilege issues, rather than fraud, and neither court applied Oregon law. *See Aventa Learning, Inc.*, 830 F Supp 2d at 1107; *Scott*, 847 N.Y.S.2d at 443. Therefore, Plaintiff cites no authority for his contention that constructive knowledge is sufficient to allege knowledge of falsity under Oregon law. Accordingly, this Court declines to find that constructive knowledge is sufficient to allege this element of fraud under Oregon law. Construing the facts in the light most favorable to Plaintiff, this Court finds that Plaintiff has failed to sufficiently allege knowledge of falsity.

Accordingly, this Court GRANTS Defendant's Motion to Dismiss Plaintiff's fraud claim with leave to amend.

---

[4] Moreover, this Court notes that Plaintiff alleges facts suggesting that Weiskotten did *not* have actual knowledge at this time, including her comment to Plaintiff on an August 12, 2021 phone call that she "never thought [Plaintiff working remotely in Arizona] would be an issue." ECF 17 at ¶ 19.

**B. Promissory Estoppel**

Defendant moves to dismiss Plaintiff's promissory estoppel claim because Plaintiff has failed to sufficiently allege reasonable reliance. ECF 18 at 12. A claim for promissory estoppel requires: "(1) a promise (2) which the promisor, as a reasonable person, could foresee would induce conduct of the kind which occurred, [and] (3) actual reliance on the promise, (4) resulting in a substantial change in position." *Neiss v. Ehlers*, 135 Or. App. 218, 222 (1995) (citation omitted); *see also Cocchiara*, 353 Or. at 291 (citations omitted). In alleging promissory estoppel, the plaintiff must allege a promise that reasonably would have been expected to "induce action or forbearance on the part of the promisee." *Cocchiara*, 353 Or. at 291. Reasonable reliance is a fact-intensive element, which requires consideration of all the relevant circumstances. *Id.* at 293.

As Plaintiff alleges the same facts in support of both his promissory estoppel claim and his fraud claim, the parties rely on their respective analyses of reasonable reliance in relation to the fraud claim to address reasonable reliance in relation to the promissory estoppel claim. ECF 18 at 22; ECF 22 at 10; *see also* ECF 17 at ¶¶ 31, 38–39. As outlined above, Plaintiff has alleged facts to support reasonable reliance in his Second Amended Complaint, including that Weiskotten told Plaintiff that there would be "no issues with him moving to Arizona," ECF 17 at ¶ 6, and that Plaintiff knew that "Defendant had employees throughout the United States, some of whom were working remotely in states where Defendant had no offices or any established presence," *id.* at ¶ 7. Construing the pleaded facts in the light most favorable to Plaintiff, this Court finds that Plaintiff has sufficiently alleged reasonable reliance to support his promissory estoppel claim. *See Cocchiara*, 353 Or. at 293 (reversing holding of no reasonable reliance as a matter of law on offer of at-will employment where "employee . . . had a lengthy employment relationship with his employer[] and the employer asserts the employee's value to the

company"); *see also Schafer et al. v. Fraser et ux.*, 206 Or. 446, 481 (Or. 1955) (noting that issue of reliance in promissory estoppel claim "presented a question for the jury").

Accordingly, this Court DENIES Defendant's motion to dismiss Plaintiff's promissory estoppel claim.

## CONCLUSION

Defendant's Motion to Dismiss, ECF 18, is GRANTED in part and DENIED in part. Defendant's motion to dismiss Plaintiff's fraud claim is GRANTED with leave to amend. Defendant's motion to dismiss Plaintiff's promissory estoppel claim is DENIED. Any amended Complaint must be filed within fourteen days of the issuance of this Opinion and Order.

**IT IS SO ORDERED.**

DATED this 3rd day of August, 2023.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge